# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

YAMILIZ RUIZ-CHAPARRO,
    Plaintiff,

    v.

JESSIE CORTES RAMOS,
JUAN E. RODRIGUEZ-RODRIGUEZ and
THE MUNICIPAL GOVERNMENT OF
AGUADA,
    Defendants.

CIV. NO. 16-1481 (MDM)

## OPINION AND ORDER

Plaintiff Yamiliz Ruiz Chaparro ("Plaintiff") is a former employee of the Municipality of Aguada (the "Municipality") who brings this action against the Municipality, its former Mayor, the Hon. Jessie Cortés, and the former Director of Finance and Budget, Juan Rodríguez Rodríguez, (collectively "Defendants"). Plaintiff lodges political discrimination claims pursuant to 42 U.S.C. § 1983, in violation of the First Amendment of the U.S. Constitution and of Article II of the Constitution of Puerto Rico, §§ 1, 2, 4, 6 and 7. (Docket No. 1).

Presently before the Court are the Municipality's Motion for Summary Judgment (Docket No. 84), which co-defendants, the Hon. Jessie Cortés and Juan Rodríguez, joined and supplemented to include qualified immunity arguments. (Docket No. 87). Plaintiff opposed the Municipality's Motion for Summary Judgment (Docket No. 103) and the Municipality filed a Reply thereto. (Docket No 111). After reviewing the parties' submissions and the pertinent case law, the Court **DENIES** the Defendants' motion for summary judgment.

## I.        Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir.2006) (alteration in original). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Id.* at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Id.* Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Mun. of Mayaguez*, 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003)).

## II.       Relevant Factual Background

The Municipality included 65 statements of uncontested material facts in support of its Motion for Summary Judgment ("DSUMF"). (Docket No. 85). From the proposed statements, Plaintiff admitted paragraphs 1, 2, 3, 6, 7, 8, 10, 13, 14, 15, 16, 17, 18, 19, 25, 29, 30, 31, 32, 33, 34, 35, 37, 39, 40, 43, 44, 45, 46, 47, 49, 54, 55, 56, 59, 63, and 64. (Docket No. 104). In addition to those statements, which were all admitted by the Plaintiff, Paragraphs 4 and 42 of the DSUMF are deemed admitted by the Court because Plaintiff's qualification of those statements were

not supported by a record citation as required by Local Rule 56. Paragraphs 9 and 20 of the DSUMF are also deemed admitted by the Court because Plaintiff's qualification of those statements and the record citation that was included by Plaintiff to support the qualification did not contradict the proposed statements.

Because most of Defendants' proposed uncontested facts are based on Plaintiff's deposition testimony and Plaintiff's responses qualifying or denying DSUMF's also rely on Plaintiff's proffered testimony, the Court thoroughly examined Plaintiff's deposition transcript at Docket No. 85-1. After a thorough review of the Parties' proposed statements of uncontested facts, and their respective responses thereto, the Court summarizes the relevant facts of the present case as follows.

Plaintiff began working for the Municipality in 1999 as an Accounting Assistant. Plaintiff claims that she is an active member of the New Progressive Party ("NPP"), that she has worked as a polling officer, and has participated in motorcades and rallies for the NPP party.

In 2012, the Hon. Jessie Cortés ("Mayor Cortés") won the election for Mayor of Aguada as a member of the Popular Democratic Party ("PDP"). He was sworn in as Mayor in January 2013. Juan Rodríguez Rodríguez ("Rodríguez") became Plaintiff's new supervisor. He held the position of Finance Director. At that time, Plaintiff held the position of Accountant in the Municipality.

Based on Plaintiff's testimony during her deposition, at the beginning, the relationship between Plaintiff and Rodríguez was a stable working relationship and Plaintiff considered Rodríguez to be her friend. Plaintiff testified that Rodríguez was an excellent person, that he treated her very well, and that he had complete confidence in her. Plaintiff became Rodríguez's "right hand man" and attested that she was the most qualified person to run the Finance Department of the Municipality. Plaintiff also attested that she was given more responsibilities and supervisory duties because of her experience, knowledge, and years working at the Municipality. Plaintiff was compensated for that additional work through

the payment of a differential, which she continued to receive until she left the Municipality.

During Mayor Cortés' administration, Plaintiff was promoted to the position of Interim Accounting Supervisor.[1] While other municipal employees were affected by a reduction in work hours, Plaintiff was not.

In 2014, Plaintiff participated in the 2014 NPP primaries in support of NPP candidate Manuel Gabina. She participated in party meetings, motorcades, rallies, and was a poll worker.

In July 2014, after the NPP primaries, Rodríguez asked Plaintiff if she had participated in the 2014 NPP primaries. Plaintiff told him that she had. Plaintiff testified in her deposition that during that conversation, she told Rodríguez that she was an "NPP'er." Rodríguez allegedly responded that he thought she had switched political parties because she was helping them at the Municipality. Aside from that comment, Rodríguez did not say anything else.

Plaintiff attested that *after* that conversation, Rodríguez' attitude towards her changed negatively. Plaintiff testified that the working relationship between them became tense, that it was no longer the "I need you" attitude, but rather, the "I need you to do this attitude." Plaintiff also testified that Rodríguez was rough when talking to her and had a "comment for everything" "to make [her] feel bad." Plaintiff further testified during her deposition that Rodríguez would not talk to her, but rather, would leave her instructions in writing on her desk.

Regarding Rodríguez's "negative" comments, during her deposition, Plaintiff testified that, on one occasion, when discussing a case that the Comptroller was reviewing, Rodríguez told her to fix the issue herself because it had nothing to do with him. Plaintiff also attested that on another occasion, when discussing the legality of a contract, Plaintiff told Rodríguez that the dates on the contract were

---

[1] Prior to Mayor Cortés' administration, Plaintiff testified that she had the same supervisory duties as she had once the Cortés administration took office; however, she did not hold the "official" position of Accounting Supervisor and did not receive a differential payment.

questionable and she refused to sign it. Plaintiff contends that Rodríguez responded rudely that she should verify them and threw the documents on the desk. On another occasion, Plaintiff testified that, as to her workload, Rodríguez told her that if she had to take work home, then she would have to do that.

Furthermore, Plaintiff testified that she was assigned more work and was given additional duties, which overloaded her with work. In short, Plaintiff testified that the Rodríguez she knew *before* completely changed *after* the conversation she had with him about her participation in the 2014 NPP primaries. Plaintiff contends that Rodríguez' negative treatment continued until she resigned.[2]

At one point, Plaintiff asked for help with her workload and the Municipality assigned Cadmiel López, an accounting analyst, to assist the Plaintiff with her duties. Plaintiff recognized during her deposition that the Municipality could not afford to hire additional accountants to assist her.

On October 28, 2015, Plaintiff presented her resignation from her position as Interim Accounting Supervisor, effective November 1, 2015. (Docket No. 95-6). In her letter of resignation, Plaintiff stated that she resigned from her position due to "health reasons." *Id*. In that same letter, Plaintiff also requested a transfer to the Federal Funds Office. *Id*.

On October 30, 2015, the Municipality, via letter signed by Mayor Cortés, accepted Plaintiff's resignation. (Docket No. 95-7). Mayor Cortés thanked Plaintiff for accepting the challenge of the position of Interim Accounting Supervisor and acknowledged that her health reasons are important and relevant. *Id*. Plaintiff's transfer request was then denied. The letter indicated that a transfer was not

---

[2] The Court notes that as part of Plaintiff's allegations of workplace harassment, she claims that, on one occasion, her pen drive was stolen, and her papers were thrown on the floor. Nonetheless, Plaintiff admitted during her deposition that her pen drive was stolen by a co-worker out of professional jealousy and that it was a personal matter, which proved *not* to involve the Defendants. (DSUMF ¶ 33, 34 and 35.) Accordingly, based on those uncontested facts, any and all allegations regarding the pen drive and related incidents shall be stricken and, therefore, Plaintiff is prohibited from using such allegations against the Defendants in furtherance of her claims.

possible because the Municipality was "in the middle of the transition process of the accounting systems conversion" but that her request may be considered in the future. *Id.*

Plaintiff attested that, at some point thereafter, she went to talk to Mayor Cortés to complain about how she felt regarding Rodríguez' attitude towards her. Plaintiff claims that Mayor Cortés told her that he knew she was a member of the NPP and that he was not going to attack Rodríguez because he had proven himself loyal to both him and the party (PDP). Plaintiff also testified that she went to talk to Mayor Cortés to inquire as to why her transfer request was denied. Plaintiff testified on one hand that Mayor Cortés responded that the Municipality was in the process of a system change, and that they had not made any decisions. On the other hand, however, Plaintiff also testified that Mayor Cortés told her that his trustworthy staff had to be PDP. Plaintiff further attested that Mayor Cortés told her that if she could not stand the pressure she should resign.

Then, via letter dated November 3, 2015, Plaintiff presented her resignation from her career position as Accounting Analyst. (Docket No. 95-8). Plaintiff indicated that she resigned from that position due to health reasons.

The Municipality, through Mayor Cortés, issued a letter accepting Plaintiff's (second) letter of resignation, which was for her career position. (Docket No. 95-9). The Municipality thanked the Plaintiff for her services and cooperation and accepted her resignation because the reasons she gave for resigning, namely, health problems, "are very important and relevant." *Id.*

Regarding her resignation, Plaintiff attested that she resigned because she had "too much of a burden," "a lot of political burden," and it was affecting her a lot. She also attested that she drafted the letter of resignation "under brutal anxiety," which purportedly began *after* her conversation with Rodríguez about her participation in the 2014 NPP primaries.

After presenting her resignation, Plaintiff issued a letter, dated November 5, 2015, where she requested reconsideration of her resignation from

her career position. (Docket No. 95-10). Plaintiff indicated that she "rashly" submitted her resignation from her career position and that she resigned because of health issues and the "oppressive" workplace conditions that she experienced, which began mid-2014. *Id.*

On November 23, 2015, the Municipality, via Mayor Cortés, denied Plaintiff's request for reconsideration and stated that Plaintiff's voluntary resignation had been accepted effective on November 3, 2015. (Docket No. 95-9). The letter also indicated that an employee had already been appointed to perform the official duties of her position. *Id.* Josué Jiménez was appointed to the position of Accounting Analyst. Plaintiff testified during her deposition that he is a member of the PPD.

### III.  <u>Discussion</u>

#### A.  A *Prima Facie* Case of Political Discrimination

A *prima facie* political discrimination claim has four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 13 (1st Cir.2011) (quoting *Lamboy–Ortiz v. Ortiz–Vélez,* 630 F.3d 228, 239 (1st Cir.2010)). The fourth element has also been described as "sufficient evidence, whether direct or circumstantial . . . that political affiliation was a substantial or motivating factor . . . that the challenged employment action stemmed from politically based animus." *González–de–Blasini v. Family Dept.,* 377 F.3d 81, 85-86 (1st Cir.2004).

Because all reasonable inferences are drawn in the non-movant's favor at summary judgment, *Padilla–García,* 212 F.3d at 73, a defendant cannot win at summary judgment unless the only reasonable interpretation of the evidence is that the plaintiff would have been dismissed in any event for nondiscriminatory

reasons. *See Reyes-Orta v. Puerto Rico Highway & Transp. Auth.,* 811 F.3d 67, 73-74 (1st Cir.2016).

In this case, the Defendants claim that Plaintiff falls short of establishing various elements of a *prima facie* case of political discrimination. Defendant's position is that Plaintiff did not present "any" factual evidence that could lead to the conclusion that she was "forced" to resign from her employment in the Municipality because of political discrimination.

The first element of Plaintiff's political discrimination claim (the parties having different political affiliations) is not disputed here, therefore, the second, third, and fourth elements will be addressed in turn.

1.    *Defendants' Knowledge of Plaintiff's Political Affiliation*

Defendants allege that Plaintiff merely infers that people in the Municipality "should" have known that she was a member of the NPP party because most of the municipal employees belonged to the NPP. (DSUMF #4.) Defendants thus claim that Plaintiff "assumes" that Defendants *knew* that she was a member of the NPP, but that she does not know whether Defendants, as a matter of fact, knew that she was a member of the NPP.

After reviewing the proposed uncontested material facts submitted by both Parties, Defendants' contention does not hold water. Here, Plaintiff set forth sufficient evidence to reasonably infer that Defendants were aware of her political affiliation. The proof that Defendants knew that Plaintiff was a member of the NPP includes the following:

Regarding co-defendant Rodríguez' knowledge of Plaintiff's political affiliation, Plaintiff testified during her deposition that when Rodríguez asked her if she had worked in the 2014 NPP primaries she responded that she did and that she was a member of the NPP. Plaintiff also attested that Rodríguez told her that he thought she had switched political parties because she had been helping the Cortés administration (PDP) at the Municipality. Defendants did not offer any evidence to contradict Plaintiff's testimony. Given the above, Plaintiff has set forth

sufficient evidence to sustain a finding that Rodríguez became aware of her political affiliation *after* the July 2014 NPP primaries conversation with Plaintiff.[3]

As to Mayor Cortés' knowledge of Plaintiff's political affiliation, Plaintiff proffered testimony during her deposition that in 2015, around the time that she presented her resignation, she personally complained to Mayor Cortés about Rodríguez. Plaintiff indicated that Mayor Cortés allegedly responded that he knew she was a member of the NPP and he was not going to attack Rodríguez because he had proven himself loyal to him and the party. (*See* Docket No. 85-1 at 104). Plaintiff also attested that she went to talk to Mayor Cortés on another occasion regarding the denial of her request for a transfer to a different position and that Mayor Cortés told her that he could not assign her that position "because he needed trustworthy people, and that his trustworthy staff had to be PDP." (*See* Docket No. 85-1 at 79-80).

The evidence on the record does not demonstrate, nor suggest in any way, that Rodríguez discussed with Mayor Cortés Plaintiff's political affiliation or anything related to her employment at the Municipality. Plaintiff's claims that Mayor Cortés knew of her political affiliation hinge exclusively on her testimony. Defendants categorically deny all allegations against Mayor Cortés, but Defendants did not present an iota of evidence to contradict Plaintiff's proffered testimony. Given the above and viewing the evidence in the light most favorably to Plaintiff, Plaintiff presented sufficient evidence for a trier of fact to infer that Mayor Cortés knew Plaintiff's political affiliation.

Regarding the timing of Mayor Cortés alleged knowledge that Plaintiff was a member of the NPP, the Court notes that the evidence on the record suggests

---

[3] Plaintiff did *not,* however, present any evidence that Defendants knew of her political affiliation *prior* to Plaintiff's conversation with Rodríguez regarding the NPP primaries in 2014, which purportedly took place on July 2014. Plaintiff testified during her deposition that *prior* to that conversation with Rodríguez, she only "assume[d]" that Rodríguez knew her political affiliation. (*See* Docket No. 85-1 at 31). There is no evidence that at any time prior to July 2014, besides her immediate co-workers, other employees in the Municipality, including Rodríguez and Mayor Cortés, knew that Plaintiff was a member of the NPP. (*See* Docket No. 85-1 at 114).

that Mayor Cortés allegedly became aware of Plaintiff's political affiliation (at some point) *after* July 2014—when Plaintiff had a conversation with Rodríguez regarding her participation in the NPP primaries of 2014.

Based on the foregoing, Plaintiff satisfied the second prong of the *prima facie* case of political discrimination.

2.   <u>*Adverse Employment Action*</u>

a.   ***Constructive Discharge***

In this case, the bulk of Plaintiff's discrimination claims hinge on her assertion that she was subjected to an adverse employment action because Defendants' negative treatment "forced" her to resign from her two positions at the Municipality, and, therefore, she was constructively discharged.

When alleging constructive-discharge, the inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign? *Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004). See* C. Weirich et al., 2002 Cumulative Supplement to Lindemann & Grossman 651-652, and n. 1 (collecting cases). Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. *Suders*, *supra. See also* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 838-839 (3d ed.1996). "The whole point of allowing an employee to claim 'constructive' discharge is that in circumstances of discrimination so intolerable that a reasonable person would resign, we treat the employee's resignation as though the employer actually fired him." *Green v. Brennan,* 136 S. Ct. 1769, 1779-80, (2016); *Suders,* supra at 141–143.

To prove that she was constructively discharged, a plaintiff must show that the new "working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Suarez v. Pueblo Intern., Inc.,* 229 F.3d 49, 54 (1st Cir. 2000); *see also Mercado-Alicea v. P.R. Tourism Co.*, 396 F.3d 46, 52 (1st Cir.

2005); *Aviles–Martínez v. Monroig,* 963 F.3d 2, 6 (1st Cir. 1992) (citing *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986)). The standard, however, "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir. 2002); *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir.2000); *see also Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." (internal quotation marks omitted)).

Further, "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Marrero*, 304 F.3d at 28 (citing *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir.1992). Rather, the jury must find that the working conditions were so unpleasant that "staying on the job while seeking redress [would have been] intolerable." *Keeler v. Putnam Fid. Trust Co.,* 238 F.3d 5, 10 (1st Cir.2001).

In the present case, to show an adverse employment action—in the form of constructive discharge—a prerequisite to Plaintiff's political discrimination claim, Plaintiff must prove that the working environment became so intolerable that her resignation qualified as a fitting response and that any reasonable person in her shoes would have felt compelled to resign.

Defendants maintain that Plaintiff failed to prove that an adverse employment action was taken against her. Basically, Defendants aver that there was no constructive discharge because Plaintiff voluntarily resigned from her positions at the Municipality. Defendants also contend that Plaintiff testified during her deposition that she resigned out of anxiety—not political discrimination. Further, Defendants allege that no adverse employment action took place because it is an uncontested fact that Plaintiff indicated in her letter of resignation that she resigned because of "health reasons" and, therefore, her failure to include political discrimination in her letter of resignation is fatal to her

claims. The Court disagrees. Plaintiff's failure to specifically indicate in her letter of resignation that she was resigning due to political discrimination or political pressure does not, in and of itself, preclude Plaintiff's political discrimination claims.

In the present case, Plaintiff presented the following evidence to support her allegation of constructive discharge. Plaintiff testified during her deposition that Rodríguez's attitude towards her changed dramatically *after* she told him that she participated in the 2014 NPP primaries and, in turn, of her association with the NPP party. Plaintiff also stated that *after* that conversation: (1) the working relationship with Rodríguez became tense, that it was no longer the "I need you" attitude, but rather, the "I need you to do this attitude." (Docket No. 85-*1* at 17, 31); (2) Rodríguez became rude and began to have a "comment for everything" and "everything had a comment to make [Plaintiff] feel bad." *Id*. at 35; (3) Rodríguez would not talk to Plaintiff, he would leave her instructions in writing at her desk. *Id*. at 102; and (4) she was assigned more work and was given additional duties.[4]

Plaintiff further identified during her deposition three specific comments that Rodríguez made *after* he learned she was an "NPP'er:" (1) when discussing a case that the Comptroller was reviewing, Rodríguez told her to "fix it [herself] because this has nothing to do with me." (*See* Docket No. 85-1 at 37); (2) regarding

---

[4] There are genuine issues of fact regarding this fourth claim by Plaintiff. A review of Plaintiff's deposition reveals contradictory testimony regarding the timing of the alleged increase in her workload and responsibilities. It is unclear whether the alleged increase in her workload and added responsibilities occurred *before* Defendants learned of Plaintiff's political affiliation—*before* July 2014—and, therefore, was *not* politically motivated. For example, Plaintiff proffered testimony that she felt an increase in workload *after* the change in administration, which occurred in January 2013. (*See* Docket No. 85-1 at 42-43). She also testified that her workload increased because she was the most knowledgeable person in the Finance Department and she had the most experience. *Id*. at 43. Furthermore, Plaintiff testified that with the change of administration (in January 2013), there was a change in personnel and that new workers would not contribute the maximum effort to their jobs and the workload fell on her. *Id*. Accordingly, based on Plaintiff's own testimony, there are issues of fact as to whether Plaintiff's alleged assignation of additional duties was, indeed, politically motivated and, therefore, could support her claims of political discrimination. If the workload increase occurred *before* July 2014 and was just part of her role as supervisor, then Plaintiff could *not* use such allegation to support her claims.

the legality of a contract, Plaintiff told Rodríguez that the dates on the contract looked "fuzzy" and she refused to sign it, Rodríguez then told her "you verify them" and threw the documents on the desk; *Id*. at 37-38; and, (3) Rodríguez instructed Plaintiff that "if [she] had to take work home, that [she] would have to take it." *Id*. at 38.[5]

Regarding Mayor Cortés, Plaintiff proffered testimony that she complained to him about Rodríguez's attitude and that he allegedly responded by saying that he knew she was a member of the NPP and he was not going to attack Rodríguez because he had proven himself loyal to him and the party (PDP). (*See* Docket No. 85-1 at 104). Plaintiff also attested that after the Municipality denied her request for a transfer to a different position, which request was included in her letter of resignation, Mayor Cortés purportedly told her that he could not assign her that position "because he needed trustworthy people, and that his trustworthy staff had to be PDP." *Id*. at 79-80. Finally, Plaintiff testified that Mayor Cortés allegedly suggested that she resign from her position if she did not like it. *Id*. at 107-108.

Plaintiff claims that under the circumstances she testified that any reasonable person in her position would have felt compelled to resign. Here, Defendants did not offer any evidence to contradict Plaintiff's testimony. Considering that Plaintiff may prevail on circumstantial evidence, viewing the evidence in the light most favorable to Plaintiff, a jury could reasonably find that Plaintiff's working conditions became objectively intolerable that she was compelled to resign. The Court finds that reasonable minds could differ as to whether the elements of a constructive discharge were met in this case. And, because the Court cannot properly decide this factual issue without making

---

[5] It is noteworthy that the above comments and actions were the only ones mentioned by Plaintiff during her deposition after she was specifically asked by the defense counsel to identify negative comments and actions by Rodríguez that "evidenced" his alleged negative treatment. As such, Plaintiff is precluded from testifying at trial as to additional conduct, if any at all, which Rodríguez purportedly engaged in to support her claims of political discrimination.

credibility determinations or weighing the evidence, which the Court cannot do at the summary judgment stage, summary judgment is not appropriate on this matter. *See King v. AC & R Advert.*, 65 F.3d 764, 767 (9th Cir. 1995) (finding that whether conditions are so intolerable that a reasonable person would be forced to resign generally is a question of fact.)

### b.     *Denial of Transfer*

Regarding Plaintiff's denial of transfer allegations, although not specifically alleged in the Complaint as an adverse employment action, Plaintiff lodged allegations that she was denied a transfer. Specifically, in her first letter of resignation, Plaintiff requested a transfer to a position at a different department, namely, Federal Funds. The Municipality denied Plaintiff's request and indicated that a transfer was not possible because the Municipality was "in the middle of the transition process of the accounting systems conversion" but that her request may be considered in the future. (Docket No. 95-7). Plaintiff testified that when she went to inquire to Mayor Cortés as to why her request was denied, the Mayor confirmed the above information. Nonetheless, Plaintiff also testified that Mayor Cortés told her that regarding her desired position, his trustworthy staff had to be PDP. Further, Plaintiff proffered testimony that after her transfer request was denied, she decided to submit her resignation from her career position.

Circuit Courts have held that "the denial of a transfer *may* constitute an adverse employment action at the *prima facie* step of discrimination analysis *when a plaintiff adduces sufficient evidence* to permit a reasonable factfinder to conclude that the sought after position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity, job security, or some other objective indicator of desirability." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008). "A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; 'subjective, personal disappointment [ ]' is not enough.'" *Beyer v. Cty. of Nassau*, 524 F.3d at 164 (citing *Williams v. R.H. Donnelley Corp.*,

368 F.3d 123, 126, 128 (2d Cir.2004). Objective indicia that the transfer denial "created a materially significant disadvantage" in the working conditions of the aggrieved employee is required. *Beyer*, supra (citing *Williams*, supra).

In this case, Plaintiff did not offer an iota of any objective evidence to show that the position she sought in Federal Funds was available or that it would have been "objectively better" to the one she previously held. Furthermore, significantly, Plaintiff claims that the fact that she was not granted the transfer, added to the negative environment that Rodríguez allegedly created, moved her to resign from her career position (second resignation). As such, Plaintiff's own allegations reveal that her claim of denial of a transfer claims is embedded in her constructive discharge claim.

In sum, Plaintiff did not sufficiently plead denial of a transfer as a "separate" adverse employment action, *distinct* from her constructive discharge claim. Nonetheless, her denial of transfer claim was sufficiently pled as part of her constructive discharge claim.

### c.       *Failure to re-hire*

Several days after Plaintiff submitted her two letters of resignation, she requested that the Municipality reconsider her decision to resign from her career position. Essentially, Plaintiff sought re-instatement to her prior career position because she "rashly submitted [her] resignation from [her] career post as accounting analyst, against [her] best intentions to serve [her] beloved city of Aguada." (Docket No. 95-10). Plaintiff therefore sets forth a failure to re-hire claim because she was not re-hired by the Municipality for her career position.

The Municipality denied Plaintiff's request for reinstatement, indicating that, regrettably they could not grant her request because her resignation had already been accepted and "an employee ha[d] already been appointed to carry out the official duties of the position of Accounting Analyst." (Docket No. 95-11). Defendants maintain that after Plaintiff resigned, they accepted her resignation, performed all internal procedures, and "quickly moved to appoint someone to

occupy the position and perform the duties and tasks related to the same." (Docket No. 84.) The Court must therefore decide whether Plaintiff's failure to re-hire claim constitutes an adverse employment action.

A plaintiff alleging such a claim must show that: (1) she applied for a particular position; (2) which was vacant; and, (3) for which she was qualified. *Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807–08 (1st Cir. 2006). In addition, she must show that she was not hired for that position. *Id.* In *Cichon v. Exelon Generation Co.,* 401 F.3d 803, 812 (7th Cir.2005), the court applied the generally accepted standard for retaliatory failure-to-hire claims, but also specified that plaintiffs making such claims must show that they applied for, and had the technical qualifications for, the position sought. *Id.* In *Ruggles v. Cal. Polytechnic State Univ.,* 797 F.2d 782, 786 (9th Cir.1986)*,* the Ninth Circuit implicitly adopted the same view, holding that a plaintiff claiming retaliatory failure-to-hire must "show that the position for which she applied was eliminated or not available to her because of her protected activities." 797 F.2d at 786 (emphasis added).

In this case, Plaintiff satisfies the first prong—that she applied for the position. In her letter for reconsideration, Plaintiff explicitly indicated that she was requesting that her resignation from her career position be reconsidered. That can certainly be interpreted as "re-applying" for her prior job. Plaintiff also satisfies the third prong—that she was qualified for the position. There can be no dispute as to the fact that Plaintiff was qualified for the career position of Accounting Analyst because she held that position prior to resigning.

Plaintiff's failure to re-hire claim hinges on the second element— demonstrating that the position was vacant. It is an uncontested fact that after Plaintiff submitted her resignation, the Municipality hired an individual to perform the duties of her prior position. In fact, in the Municipality's denial of Plaintiff's request for reconsideration, the Municipality expressly indicated that an employee had already been appointed to carry out the official duties of her career position, which was Accounting Analyst. Plaintiff does not contest this fact.

To the contrary, she proffered testimony that Josué Jiménez was appointed to her prior position.

The uncontested evidence on the record reveals that Plaintiff's prior career position was *not* vacant when the Municipality responded to Plaintiff's letter of reconsideration. Nevertheless, that fact alone does not conclude the analysis.

The Court weighs the fact that Plaintiff proffered testimony indicating that Josué Jiménez had been hired to replace her and that he was a member of the PDP (while she was an NPP). While Plaintiff did not offer any extrinsic evidence to prove—beyond her belief—that Mr. Jiménez was in fact a member of the PDP, Defendants did not deny that Mr. Jiménez is affiliated with the PDP. The timing of the Municipality's actions is also troubling to the Court. Plaintiff presented her resignation from her career position via letter, dated November 3, 2015, and requested reconsideration of her decision via letter, dated November 5, 2015. The Municipality denied Plaintiff's reconsideration on November 23, 2015. There is no evidence on the record to answer whether the Municipality had already hired Mr. Jiménez before November 5, 2015, when Plaintiff submitted her reconsideration, or whether he was hired *after* Plaintiff submitted her resignation. The answer to that question is essential to this analysis.

Even if the Court assumed, without deciding, that Plaintiff's prior position was not available, viewing the evidence in the light most favorable to Plaintiff, and drawing all inferences against the Defendants, a reasonable fact trier could conclude that Plaintiff's prior career position was not available to her *because of her political affiliation. See Ruggles,* 797 F.2d at 786. This factual dispute precludes the Court from determining whether Plaintiff's failure to re-hire claim, indeed, constitutes an adverse employment action. This determination must be left to the province of the jury.

3.    *Causation*

Finally, as to the fourth element of Plaintiff's *prima facie* case, causation, Plaintiff must show that political discrimination was a substantial or motivating

factor in the challenged employment actions. Defendants maintain that, even if comments were made regarding Plaintiff's political affiliation, which Defendants deny, "Plaintiff fails to prove any link between that and her employment conditions." (Docket No. 84 at 11). Further, Defendants allege that even if they were to accept that "the workload was substantial and/or that it caused anxiety to the Plaintiff, the uncontested facts prove that the issue was not caused by any political discrimination against the Plaintiff." *Id.*

Although there is little direct evidence, if at all, that Defendants' actions indeed resulted from political animus, Plaintiff proffered testimony during her deposition which could lead a reasonable fact trier to conclude that Defendants' actions were politically motivated. For example, Plaintiff attested that *before* Rodríguez knew of her political affiliation, there were no workplace issues, that the relationship between her and Rodríguez was a stable working relationship, that Rodríguez was an excellent person who treated her very well, and Plaintiff considered him to be her friend. (*See* Docket No. 85-1 at 101-102.) In contrast, Plaintiff testified that when she revealed to Rodríguez that she had participated in the 2014 NPP primaries, Rodríguez' attitude towards her changed in a negative manner, as the Court has explained in detail above.

Defendants did not present any extrinsic evidence to contradict Plaintiff's testimony of the "negative" or "abusive" environment that she was allegedly subjected to by Defendants, mainly Rodríguez. Defendants rely primarily on self-serving excerpts of Plaintiff's own testimony and the fact that Plaintiff did not indicate in her letter of resignation that she resigned because of political pressure or political discrimination. As previously explained, that contention misses the mark because that alone does not demonstrate a lack of causation.

Furthermore, Defendants maintain that, at one point during her deposition, Plaintiff testified that she was *not* pressured politically into resigning. Plaintiff, however, attested that she drafted her letter of resignation "under brutal anxiety" and specified that she "had this anxiety ever since, after the primary, the attitude

started, they started the attitude against me." (Docket No. 85-1 at 83). Namely, after Rodríguez learned of her political affiliation. In addition, when asked by defense counsel why she resigned from her career position, Plaintiff responded "because I had too much of a burden; I had a lot of *political* burden[s], and it was affecting me a lot. . . ." *Id.* at 79. The deposition also reveals that Plaintiff testified that the "health conditions" she referenced in her letter of resignation referred to her emotional state because "she had a lot of work," "a lot of pressure" and Rodríguez' attitude affected her a lot." *Id.* at 76.

Regarding Mayor Cortés, as noted above, Plaintiff testified during her deposition that Mayor Cortés indicated to her that he could not grant her a transfer to the position she sought because, allegedly, he needed trustworthy people, and that meant individuals affiliated with the PDP, which Plaintiff was not.

In contrast with the above, Plaintiff also indicated that the *only* comment of a political nature that Rodríguez made was when he asked her whether she had participated in the 2014 NPP primaries and he mentioned that he thought Plaintiff had switched parties (from NPP to PDP). (Docket No. 85-1 at 39). Aside from that, it is an uncontested fact that Rodríguez never made any (other) comment to Plaintiff of a political nature. (*See* DSUMF #25). Such admission, although *not* definitive proof of a lack of political animus, certainly counters Plaintiff's allegations of "continuous persecution" by Rodríguez because of political discrimination. (*See* Complaint at page 8.)

Finally, regarding Plaintiff's resignation, Plaintiff essentially testified at one point during her deposition that she resigned because of health issues and anxiety caused by the negative work environment that Rodríguez subjected her to after he learned of her political affiliation. Notwithstanding that, however, Plaintiff also testified at another point during her deposition that she was *not* pressured politically into resigning. (Docket No. 85-1 at 83).

The evidence submitted by the Plaintiff, taken together, and viewed in the light most favorably to the Plaintiff, could lead a reasonable jury to infer that

Defendants' actions were politically motivated. Based on the foregoing, whether political discrimination was a substantial or motivating factor in the challenged employment actions (constructive discharge and failure to re-hire) is a heavily contested factual dispute, which bars summary judgment.

### B.    Defendants' *Mt. Healthy* Defense

When, like here, a plaintiff sufficiently establishes a *prima facie* case, defendants can offer evidence challenging the claim and must show that "[they] would have taken the same action regardless of the plaintiff's political beliefs— commonly referred to as the *Mt. Healthy*, infra, defense." *Padilla–García v. Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000). *See also Peguero-Moronta v. Santiago*, 464 F.3d 29, 45–46 (1st Cir. 2006). As such, a defendant can raise an affirmative defense specific to this type of case.

Defendants must "demonstrate that (i) they would have taken the same [adverse employment] action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." *Velez–Rivera v. Agosto–Alicea,* 437 F.3d 145, 152 (1st Cir.2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977). To establish a successful *Mt. Healthy* defense, it is the defendants' responsibility to persuade the factfinder that they would have made the same decision even if the illegitimate reason had not been a factor. *See Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir.2008); *Padilla–García,* 212 F.3d at 77–78. If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence, by adducing evidence that discrimination was more likely than not a motivating factor. *Velez–Rivera,* supra at 153.

Having discussed the legal framework, the Court now turns to the Defendants' *Mt. Healthy* defense in this case. The key inquiry at summary judgment is whether Defendants can show—with all reasonable inferences drawn in Plaintiff's favor—that they had a lawful reason for the alleged adverse employment actions (constructive discharge and failure to re-hire) and that they

would have used that lawful reason for such adverse employment actions *regardless* of Plaintiff's political affiliation and that there is no genuine dispute of material fact on these issues. *See Reyes-Orta v. Puerto Rico Highway & Transp. Auth.*, 811 F.3d 67, 77 (1st Cir. 2016).

Defendants maintain that Plaintiff failed to present sufficient factual evidence to conclude that she was forced to resign from her employment because of political discrimination. Regarding Plaintiff's constructive discharge claim, Defendants' rely heavily on their contention that Plaintiff decided to freely and voluntarily resign from her two positions at the Municipality for health issues and reasons unrelated to any political discrimination. Regarding Plaintiff's failure to re-hire claim, Defendants allege that the Municipality had no legal obligation to re-employ her after she resigned. And, that, after she resigned, the Municipality took immediate action and the appropriate steps to appoint someone to perform the duties of Plaintiff's prior position because of the importance of the position.

Nonetheless, as thoroughly discussed above, as to the constructive discharge claim, Plaintiff proffered testimony that she resigned from her positions at the Municipality "because [she] had too much of a burden; [she] had a lot of *political* burden, and it was affecting [her] a lot. . . ." (Docket No. 85-1 at 79). Plaintiff further attested that the "health conditions" that she referred to in her letter of resignation were indeed emotional conditions caused by Defendants' conduct and that she was "forced" to resign because of the negative treatment that Defendants, mainly Rodríguez, purportedly subjected her to *after* they learned of her political affiliation.

Regarding Plaintiff's failure to re-hire claim, the only evidence that Defendants presented to challenge Plaintiff's failure to re-hire claim is the Municipality's answer to Plaintiff's letter for reconsideration. Allegedly, the Municipality denied Plaintiff's request for reconsideration to be re-employed following her resignation because the Municipality had already accepted her resignation and had appointed an individual to her prior position. (Docket No. 95-

11). Defendants also made a proffer of their legitimate and non-discriminatory reason for not re-hiring the Plaintiff—that the nature of Plaintiff's prior position "required" the Municipality to act quickly after Plaintiff resigned and appoint someone to perform Plaintiff's prior duties. (Docket No. 84-3). That proffer however was not substantiated by any evidence. *Id.*

A review of Defendants' Motion for Summary Judgment reveals that Defendants' *Mt. Healthy* defense is barely alleged. (Docket No. 84). Defendants discussed the applicable case law; however, they did not adduce sufficient uncontested evidence to uphold the defense. Even assuming without deciding that Defendants had a lawful reason for the alleged illegal employment actions against Plaintiff (either because she voluntarily resigned for health reasons unrelated to any type of political discrimination or because the Municipality would have rejected her request for reconsideration in any event), the evidence on the record is sufficient to create a triable factual dispute as to whether Defendants would have taken the alleged illegal actions against the Plaintiff, regardless of her political affiliation. The evidence submitted by the Plaintiff, although circumstantial, when taken together, and viewed in the light most favorably to her, could lead a reasonable jury to infer that discrimination was more likely than not a motivating factor. *See Velez–Rivera,* supra at 153. [6]

Accordingly, Defendants did not make the requisite showing to establish a successful *Mt. Healthy* defense at this stage. The defense can of course be re-visited, if necessary, after trial.

## C.    Qualified Immunity

Co-defendants Mayor Cortés and Rodríguez, appearing in their individual capacity, maintain that they are entitled to qualified immunity (Docket No. 87). Qualified immunity is an affirmative defense that operates as a shield against

---

[6] *See Padilla-García v. Rodriguez,* 212 F.3d 69, 78 (1st Cir. 2000) ("The evidence by which the plaintiff established her *prima facie* case may suffice for a factfinder to infer that the defendant's reason is pretextual and to effectively check summary judgment").

unwarranted charges that the official violated the Constitution in the course of performing the functions of the office. *Garnier v. Rodríguez*, 506 F.3d 22, 26 (1st Cir. 2007) (internal citation omitted). Such defense provides a "safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. Sec. 1983 for infringing the constitutional rights of private parties." *Borges Colón v. Román-Abreu*, 438 F.3d 1, 18 (1st Cir.2006).

Whether defendants are entitled to qualified immunity calls for a two-part analysis. *See Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014) (citing, *Haley v. City of Boston*, 657 F.3d 39, 47 (1st Cir. 2011)). First, the court must determine whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation. *Ford*, 768 F.3d at 23. Second, the court needs to assess whether the violated right was clearly established at the time that the offending conduct occurred. *Id.* The "clearly established" element encompasses two questions: (1) whether the contours of the right, in general, were sufficiently clear; and (2) whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right. *Id.* (*citing Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009)).

Whether qualified immunity applies turns on the objective reasonableness of defendants' actions in the challenged adverse employment actions. Basically, Mayor Cortés and Rodríguez argue that Plaintiff failed to establish a violation of her constitutional rights because: (1) at one point during her deposition she indicated that she resigned from her position of Interim Accounting Supervisor after not being granted her request to be transferred to the Federal Funds Division; (2) Plaintiff only mentioned health issues as the reason for her resignation; (3) Plaintiff admitted during her deposition that she resigned out of anxiety; (4) Plaintiff did not mention political discrimination in her letter of resignation or in her letter of reconsideration after she had resigned; and (5) Plaintiff testified during her deposition that she is aware that the Municipality had no obligation to rescind or take back her resignation. (*See* Docket No. 87).

In short, Mayor Cortés and Rodríguez allege that Plaintiff failed to establish a First Amendment claim of political discrimination. Therefore, they claim that Plaintiff did not establish a deprivation of her constitutional rights and, as such, they are entitled to qualified immunity and all claims against them should be dismissed.

As previously held by the Court, however, there are significant material facts in dispute that must be left to the fact-trier's province, which preclude the Court from determining whether qualified immunity applies to Mayor Cortés and Rodríguez. Specifically, factual disputes as to whether Plaintiff indeed suffered an adverse employment action and whether her political affiliation was a substantial or motivating factor in the adverse employment actions alleged. The First Circuit has held that when only a fact finder's determination of the conflicting evidence as to the underlying historical facts will permit resolution of the qualified immunity issue, summary judgment ceases to be an appropriate vehicle. *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir. 1991). *See also Maldonado*, 568 F.3d at 269; *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002); *Swain v. Spinney*, 117 F.3d 1, 9 (1st Cir. 1997) (noting that "[t]his prong of the inquiry, while requiring a legal determination, is highly fact specific, and may not be resolved on a motion for summary judgment when material facts are substantially in dispute.")

Thus, the Court is impeded at this stage from determining whether Mayor Cortés and Rodríguez are entitled to qualified immunity. Consequently, such co-defendants' request to dismiss the case against them on qualified immunity grounds must be **DENIED without prejudice**.

## IV.    Conclusion

For the above-mentioned reasons, Defendants' "Motion for Summary Judgment" (Docket No. 84) is **DENIED** and co-defendants Mayor Cortés' and Rodríguez' "Motion Joining Municipality's Motions for Summary Judgment and Supplementing for Qualified Immunity Purposes" (Docket No. 87) is also **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of January 2019.

<u>s/ ***Marshal D. Morgan***</u>
MARSHAL D. MORGAN
UNITED STATES MAGISTRATE JUDGE